UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | **2:23-CR-20683-TBG-EAS** |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (ECF NO. 41)** |
| **LANCE CRAIG MAHONE,** | |
| Defendant. | |

Lance Craig Mahone, Jr. ("Mahone") has moved to suppress evidence obtained after officers searched the contents of his cellphone pursuant to a state search warrant. *See* ECF Nos. 41, 46, 47, & 48. Mahone now faces charges of child sexual exploitation, attempted sex trafficking of a minor, coercion and enticement of a minor, and receipt and possession of child pornography. ECF No. 18.

The Court heard oral argument on the motion on June 3, 2025 and continued the hearing to July 29, 2025 to allow testimony and permit the parties to file supplemental briefing on the constitutional issue of warrant particularity. *See* ECF Nos. 49, 50, 52, & 53. After the testimony of Dr. Gray, records custodian of the 36th District Court, Officer Strunk, and Officer Jaskulski on July 29, 2025 (*see* Transcript, ECF No. 55), Defendant requested the opportunity to present supplemental briefing on the constitutional issue of whether the warrant was "issued" properly

prior to the execution of the search. *See* ECF Nos. 56, 57, & 58. The Court granted Defendant's request and all the necessary briefs are now before the Court. For the following reasons, Mahone's Motion to Suppress (ECF No. 41) will be **DENIED**.

## I. BACKGROUND

### A. The Affidavit

On June 13, 2022, FBI Agent Jeremy Jaskulski and Detroit Police and Officer Michael Strunk, as part of the FBI's Southeast Michigan Trafficking and Exploitation Crimes ("SEMTEC") task force, sought a search warrant for Mahone, his 2016 Jeep Cherokee, and his cell phone. *Search Warrant Affidavit*, ECF No. 45 (sealed), PageID.164.

The affidavit in support of the search warrant pertained to a sex trafficking investigation of a certain Alexzonder Rodriguez and described his involvement in a Detroit-based prostitution ring. *Affidavit*, ECF No. 45 (sealed), PageID.164. In connection with the Rodriguez investigation, the officers discovered text conversations between Rodriguez and Mahone, who had previously met each other while serving sentences for prior sex offenses in the Michigan Department of Corrections. *Id.* at ¶¶ 4-5.

Based on these text conversations and other statements from adult victims, Agent Jaskulski drafted the affidavit and warrant to search Mahone, his car, and cellphone. *Transcript*, ECF No. 55, PageID.298. The warrant and affidavit listed offenses including soliciting commit

prostitution, engaging services for purpose of prostitution, transporting a person for prostitution, using a computer to commit a crime, and aiding, assisting, or abetting in human trafficking. *Affidavit*, ECF No. 45 (sealed), ¶ 4-5.

The list of items to be "searched for and seized" included, in relevant part, addresses and telephone numbers of associates in the human trafficking organization, including those stored on cell phones, *id.* at ¶ 2.E, electronically stored evidence, including e-mails, ¶ 2.H, records and information related to identifying victims of human trafficking or the purchasers of commercial sex acts, including photographs, videos, and documents, ¶ 2.I, and records and information related to sex trafficking, including copies of commercial sex advertisements and communications with Rodriguez and adult victims, ¶ 2.K.

### B. The Warrant

Officer Strunk e-mailed the affidavit and search warrant application to the 36th District Court on June 13, 2022, at 1:49 p.m. ECF No. 57-8, PageID.395.[1] Presenting search warrants to the judge by email was the practice during the COVID-19 pandemic because officers were

---

[1] The same email was presented as evidence in two different exhibits which are identical in all aspects except for their timestamp: one indicates it was sent at 1:49 p.m. and the other indicates it was sent at 2:49 p.m. *See* ECF No. 57-8, PageID.395; ECF No. 57-11, PageID.398. This discrepancy will be further addressed below.

not allowed into the courthouse building. *Declaration of Michael Strunk ("Strunk Decl.")*, ECF No. 46-2, PageID.203, ¶¶ 4-5.

Officer Strunk testified that Magistrate Judge Rodney Johnson called him shortly after the email had been sent to swear out the affidavit over the phone. ECF No. 55, PageID.329; *see also Declaration of Rodney Johnson ("Johnson Decl.")*, ECF No. 46-3, PageID.209, ¶ 4. Agent Jaskulski testified he was standing next to Officer Strunk during the swear-to over the phone. ECF No. 55, PageID.317. At the end of the call Officer Strunk testified that Judge Johnson told him he would "send [the warrant] right back to [him]." ECF No. 55, PageID.332-33. Judge Johnson wrote in an affidavit that he found the warrant affidavit established probable cause to search Mahone's phone. *Johnson Decl.*, ECF No. 46-3, PageID.209, ¶ 4. Judge Johnson electronically signed the last page of the warrant affidavit on June 13, 2022 at 2:13 PM. *Id.* at ¶¶ 4-5; *Affidavit*, ECF No. 45 (sealed), PageID.174. While having "no memory of failing to sign the warrant," Judge Johnson admits he "apparently did not sign the warrant itself and only signed the affidavit," which was "mere administrative error" on his part. *Johnson Decl.*, ECF No. 46-3, PageID.209, ¶ 5.

The officers intended to execute the search warrant around 6:30 a.m. the next day, on June 14. *Gov. Ex. 3*, ECF No. 57-4, PageID.378. However, it took some time for the 36th District Court to send the documents back to Officer Strunk. Agent Jaskulski texted Officer Strunk

at 4:33 p.m. on June 13 asking for an update on the search warrant, to which Officer Strunk responded that "[T]hey never sent it back." *Gov. Ex. 9*, ECF No. 57-10, PageID.397. Officer Strunk called the 36th District Court which said they would "resend" the search warrant, but Officer Strunk still had not received it by the end of the business day at 4:58 p.m. *Id.*

### C. The Search

Yet, as planned, and without the search warrant actually in hand, the officers visited Mahone at his job at Belle Tire Distribution Center the next morning, around 6:30 a.m. on June 14, to interview him and eventually seize his phone. *Strunk Decl.*, ECF No. 46-2, PageID.203, ¶ 9. When the officers asked Mahone for the passcode to his phone, Mahone twice asked to see the warrant, but Officer Strunk responded they would show it to him later. ECF No. 41, PageID.148; *Def. Ex. D*, ECF No. 41, at 01:18:42-01:20:10. After Mahone gave—or as the defense maintains, was coerced into giving—the passcode for his phone, the FBI completed an extraction of the device. *Strunk Decl.*, ECF No. 46-2, PageID.203, ¶ 9; ECF No. 41, PageID.135. Mahone's phone contained over 2,000 messages with a minor victim, including messages where Mahone encouraged the minor victim to engage in sex work. ECF No. 46, PageID.183. The phone also contained videos and images of Mahone conducting sexual acts with the minor victim. *Id.*

Not until after the search was complete, on June 14 at 2:15 p.m., did the 36th District Court email the (signed) affidavit and (unsigned) search warrant back to Officer Strunk, with Judge Johnson copied on the email. ECF No. 46-2, PageID.206; *Search Warrant*, ECF No. 45 (sealed), PageID.175-76; *Supp. Declaration of Michael Strunk ("Strunk Supp. Decl.")*, ECF No. 53, PageID.265, ¶ 4. Officer Strunk called the 36th District Court to inform them of the lack of signature on the search warrant and the court staff said they would send a corrected version with a signature. *Strunk Decl.*, ECF No. 46-2, PageID.203, at ¶ 9. But they never did.

In another irregular move, after the search, Agent Jaskulski completed a "property receipt" and "FBI Form-302" in which he mistakenly wrote the warrant was signed by Judge Laura Echartea. ECF No. 45-1 (sealed), PageID.178. He testified this was done in error, and that Judge Echartea had authorized the warrant for Rodriguez's phone but not Mahone's phone. ECF No. 55, PageID.304. The parties agree that although Judge Johnson attests that he intended to sign the warrant, the search warrant was never actually signed by Judge Johnson or any other magistrate.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), a defendant may file a pretrial motion asserting a constitutional violation that justifies suppression of any unlawfully obtained evidence. *See* Fed.

6

R. Crim. P. 12(b)(3)(C); *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979) (noting that the defendant bears the burden to prove the violation of a constitutional right justifying suppression).

The Fourth Amendment protects "[t]he right of the people to be secure in their . . . effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It requires "only three things" with respect to search warrants: (1) that search warrants be issued only by "neutral and detached" magistrates, (2) that search warrants issue only upon a finding of "probable cause" supported by oath or affirmation, and (3) that search warrants "particularly describ[e] the place to be searched, and the . . . things to be seized." *United States v. Beals*, 698 F.3d 248, 264 (6th Cir. 2012) (citations omitted) ("[O]*nly* the Fourth Amendment (to the exclusion of state law) applies in federal prosecutions involving evidence seized by state officials.").

Recognizing the "immense storage capacity" of cell phones, the Supreme Court has held that officers must generally obtain a warrant before searching the contents of a phone. *Riley v. California*, 573 U.S. 373, 401 (2014) (holding that the search incident to arrest exception does not apply to the content of cell phones). "[E]vidence seized during an unlawful search [cannot] constitute proof against the victim of the search," *Wong Sun v. United States*, 371 U.S. 471, 484 (1963), and thus must be excluded unless an exception to the exclusionary rule applies. *See Weeks v. United States*, 232 U.S. 383, 398 (1914) (establishing the

exclusionary principle); *United States v. Leon*, 468 U.S. 897 (1984) (establishing the good-faith exception to the exclusionary rule).

## III. DISCUSSION

The motion to suppress targets three constitutional problems with the search warrant in this case: (A) whether the magistrate judge issued the search warrant prior to the search, (B) whether the search warrant was supported by probable cause that evidence would be found on Mahone's phone, and (C) whether the search warrant was sufficiently particular to allow the search of the contents of Mahone's phone that was seized.

### A. Whether the Warrant Was Validly Issued

Mahone argues that the lack of signature on the search warrant suggests the search warrant was never issued, such that officers violated both Mahone's Fourth Amendment rights and Federal Rule of Criminal Procedure 41 when they searched his phone without a signed warrant, and in the absence of any exigent circumstances, or good faith exception.

But the record in this case highlights the question of whether a warrant must be *signed* in order to be properly *issued*. The Sixth Circuit recently addressed this question and held that "the Fourth Amendment's text does not require a signature for a warrant to be issued." *United States v. Whiteside*, No. 24-1173, 141 F.4th 734, 745 (6th Cir. May 19, 2025). Instead, to determine whether an unsigned warrant was validly issued under the Fourth Amendment, there must be "'clear and

contemporaneous evidence' that the magistrate made the 'proper probable cause determination' and approved the warrant's issue." *Id*. (citing *United States v. Lyons*, 740 F.3d 702, 726 (1st Cir. 2014)).

In *Lyons*, the state justice signed the warrant application and the accompanying affidavit but unintentionally forgot to sign the warrant itself. 740 F.3d at 724. When the state officers noticed the omission after the search was complete, they returned to the issuing judge, who belatedly signed the warrant and wrote a note explaining that his failure to sign was "inadvertent and of no substantive consequence." *Id*. The First Circuit deemed that the evidence "amply" supported a finding that the state judge had both reviewed the application and determined that probable cause existed before the search. *Id*.

In *Whiteside*, the state judge called the officer and administered the oath, signed the first page of the affidavit, but failed to sign the actual search warrant. 141 F.4th at 746. The Sixth Circuit found the judge had made the necessary probable cause determination, despite not specifically recalling the warrant, based on her testimony that she would have stricken part of the affidavit if she did not approve of it. The judge's court staff also testified that the judge would not have given her the warrant documents if they had not been approved. *Id*.

In this case, Judge Johnson signed the warrant affidavit but inadvertently neglected to sign the warrant itself. This irregularity by

itself would appear to be governed by *Whiteside*, and based on its holding would not present a basis for suppression on its own.

But during oral argument on June 3, the evidence presented included certain discrepancies regarding the timing of the issuance of the warrant that were not addressed in *Whiteside*. For instance, it appears Judge Johnson signed the affidavit on June 13 at 2:13 p.m., but the 36th District Court emailed the documents back to Officer Strunk 24 hours later, on June 14 at 2:15 p.m., *after* the officers had already seized and searched Mahone's phone. ECF 46-2, PageID.204. Agent Jaskulski's review of his own email records indicate that the affidavit was not sent to Judge Johnson until 2:45 p.m. on June 13, 32 minutes after Judge Johnson allegedly signed the affidavit. ECF No. 57-4, PageID.378. Even more bizarrely, the government presented two separate exhibits of the same email by which Officer Strunk sent the warrant application to the 36th District Court on June 13, with the sole difference being that they contain different timestamps. One indicates that it was sent at 1:49 p.m., making it possible for Judge Johnson to sign the affidavit 24 minutes later at 2:13 p.m., as indicated by the timestamp next to his signature on the affidavit. ECF No. 57-8, PageID.395. But the other one indicates it was sent at 2:49 p.m., casting doubt on the accuracy of Judge Johnson's time-stamp and the timing of the issuance of the warrant, because the judge could not have signed the affidavit before he received it. ECF No. 57-11, PageID.398.

As a result, Mahone argued the evidence did not clearly and contemporaneously show that Judge Johnson approved the issuance of the warrant. In an attempt to clarify the timeline, the Court held an evidentiary hearing on July 29, 2025, during which the government presented 11 exhibits through three witnesses: Officer Michael Strunk, Agent Jeremy Jaskulski, and Dr. Denise Gray, the custodian of the 36th District Court search warrant email account. ECF No. 55, PageID.277. The Court also reviewed Judge Johnson's affidavit. *Johnson Decl.*, ECF No. 46-3, PageID.209.

No witness could explain why there was an apparent time discrepancy of one hour between certain emails. Agent Jaskulski had no explanation as to why his Microsoft Outlook emails contained timestamps that were inconsistent with Judge Johnson's time- stamped signature of June 13, 2022, 2:13 p.m. ECF No. 55, PageID.316. Dr. Gray did not know why the time stamp on Officer Strunk's email to the court was 1:49 p.m. in one exhibit and 2:49 p.m. in another, but she believed that both emails were the same email. ECF No. 55, PageID.291-92. Officer Strunk did not know why there was a one-hour discrepancy between Jaskulski's e-mail timeline and his own e-mail to the court. ECF No. 55, PageID.349-52. The government it its briefing offers no explanation as to why Microsoft Outlook e-mail metadata could be off by one hour on any given person's computer.

While these anomalies are disconcerting and contrary to what the Court and the public expect to see in the normal course of law enforcement and judicial process, the key question for constitutional compliance purposes is not to pinpoint with certainty when a warrant was issued, but rather to examine the record for "clear and contemporaneous evidence" showing whether the warrant was in fact "issued" before the search was undertaken. And here, the record contains such evidence. Even though Dr. Gray sent the (still unsigned) warrant back *after* the search, substantial evidence shows that the warrant was approved and issued on June 13, before the search was conducted on the morning of June 14.

For instance, Officer Strunk testified that he was "contacted by the magistrate and swore to the affidavit" only "[a] short period of time" after he submitted the search warrant to the 36th District Court via email on June 13. ECF No. 55, PageID.329. Judge Johnson attested in an affidavit that Officer "Strunk swore-to the warrant over the phone" on June 13 (*Johnson Decl.*, ¶ 4, ECF No. 46-3, PageID.209) and Agent Jaskulski testified he witnessed the swear-to over the phone on June 13 (*Transcript*, ECF No. 55, PageID.299-300).

Mahone contends, however, that the fact that the call occurred on June 13 does not constitute "clear and contemporaneous evidence" that the judge actually approved the warrant the same day. In support, he refers to the fact that the warrant was not sent back to the officers by the

36th District Court until after the search—so that the officers did not receive *written* confirmation of the issuance of the warrant before the search—and to Agent Jaskulski's testimony that the judge did not explicitly say he approved the warrant over the phone—so that the officers did not receive *verbal* confirmation before the search either. Agent Jaskulski testified as follows:

> THE WITNESS: Task force officer received a telephone call. He raised his right hand. The judge asked him if it was true and accurate, and he said it was, and he hung up the phone.
>
> THE COURT: [W]as there any conversation with respect to the judge approving the warrant on the call from what you can recall?
>
> THE WITNESS: Not that I can recall, sir. . . . My understanding was that when the judge, after my -- Task Force Officer Strunk attested it was true, that the judge -- that that meant that the warrant was good to go, that we had an approved warrant, as had been the protocol in numerous other investigations where I had been present, where Task Force Officer Strunk swore out a warrant telephonically with a 36th District magistrate.
>
> THE COURT: Your understanding was that when it was sworn out over the phone, that contemporaneously with that, the magistrate judge was signing it?
>
> THE WITNESS: Yes, your Honor.

ECF No. 55, PageID.317-18.

However, Agent Jaskulski only overheard the phone conversation. Officer Strunk, who spoke directly to Judge Johnson on the phone, testified that the judge did not ask any questions about the warrant and

said he would "send it right back to [him]," which he believed meant the judge approved it. Officer Strunk testified as follows:

> Q. Do you remember if he had any questions?
>
> A. Not that I recall.
>
> [. . .]
>
> Q. And did he tell you at the end of that conversation that the warrant was approved?
>
> A. He did. He actually said, "I'll send it right back to you."
>
> Q. Okay. And when he said, "I'll send it right back to you," what did you understand him to mean?
>
> A. At that point in time, I understood that it was signed, It was good to go, and I would be receiving a hard copy shortly . . . via email.

ECF No. 55, PageID.332-33.

Judge Johnson himself submitted an affidavit indicating the warrant affidavit established probable cause to search Mahone's person, vehicle, and phone. *Johnson Decl.*, ECF No. 46-3, PageID.209, ¶ 4. Mahone complains that Judge Johnson did not specifically recall issuing the warrant and conclusively stated he approved it in his declaration, without explaining his process for approving (or rejecting) warrants the same way the judge in *Whiteside* did. 141 F.4th at 740. But Judge Johnson did point to the fact that his signature was on the affidavit when asserting he had approved the warrant, *Johnson Decl.*, ECF No. 46-3, PageID.209, ¶ 5, just as the judge in *Whiteside* testified that her

signature on the first page of the affidavit indicated that she reviewed the documents. 141 F.4th at 746. Officer Strunk testified further that Judge Johnson told him he would send the warrant back. He signed the affidavit without crossing anything out. He did not ask any clarifying questions to Officer Strunk suggesting that additional facts were needed, and did not otherwise do anything suggesting that he did not approve the warrant.

Furthermore, while the court clerk did not email the officers the unsigned warrant the same day of the swear-to, like the clerk in *Whiteside* did, 141 F.4th at 740, Officer Strunk testified that he called the 36th District Court a second time after the swear-to to inquire about the warrant and that he "spoke to somebody, possibly the court clerk, [who] said he was resending it over." ECF No. 55, PageID.337. Officer Strunk subsequently texted Agent Jaskulski that he "just called over" at 4:37 p.m. and that the court would "resend" the warrant. ECF No. 57-10, PageID.397. Thus, the clerk's indication that the warrant would be "resen[t]" reflects both the clerk's and the officers' "belief that the judge had made the necessary probable cause determination" on June 13, as was the situation in *Whiteside*. 141 F.4th at 746.

Therefore, based on the evidence presented—including live testimony and an affidavit from four independent witnesses, namely Judge Johnson, Officer Strunk, Agent Jaskulski, and Dr. Gray, substantively corroborated by emails, text messages, and the signed

affidavit—the Court finds that there was "clear and contemporaneous evidence" that Judge Johnson "reviewed the warrant, determined probable cause existed, and signed the accompanying affidavit," thereby validly issuing the warrant on June 13 before the search the next day. *Id*. Because there is sufficient contemporaneous evidence that the search warrant was validly issued before the search, we need not address whether the good-faith exception to the warrant requirement applies. *Whiteside*, 141 F.4th at 746 (citing *United States v. Simmons*, 129 F.4th 382, 391 (6th Cir. 2025)).

Finally, as to Mahone's late-submitted argument that the officers violated the Federal Rules of Criminal Procedure's signature requirement for search warrants issued by telephonic means, that argument also fails to carry the day. First, the federal rules do not apply to a "task-force investigation by state and federal authorities," like the SEMTEC task force, for which "the officers have the flexibility to seek a warrant from the state court based on state law violations," in which case "the Federal Rules of Criminal Procedure do not apply," even when the evidence seized is subsequently used in federal criminal proceedings. *United States v. Williams*, 2021 WL 3079698, at *2 (6th Cir. July 21, 2021) (citing *United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014)).

Second, a violation of Rule 41 "alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been

followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." *United States v. Searp*, 586 F.2d 1117, 1125 (6th Cir. 1978). The fact that the officers did not need to follow Rule 41 undercuts Mahone's argument that Agent Jaskulski intentionally disregarded the rule. And, because the warrant was validly issued under the Fourth Amendment, the absence of a signature on the warrant itself did not prejudice Mahone because the search would have occurred in the same way even if both the affidavit and warrant had been signed according to Rule 41. Thus, the alleged Rule 41 violation does not warrant suppression here either.

### B. Whether the Warrant Was Supported by Probable Cause

In addition to the question of whether the warrant was properly issued prior to the search, Mahone also challenges the magistrate's probable-cause conclusion.

The Fourth Amendment provides that no warrant shall be issued except upon probable cause. U.S. Const. amend. IV. The issuing judge must "make a practical, common-sense decision" to determine from the affidavit provided by the officers seeking the warrant whether, "given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *see also United States v. Helton*, 35 F.4th 511, 517 (6th

Cir. 2022) (noting that a "search warrant affidavit must establish a 'nexus between the place to be searched and the evidence sought'") (citation omitted); *United State v. Rodriguez-Suazo*, 346 F.3d 637, 644 (2003) ("The issuing judge . . . 'may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found[.]'").[2] "[G]reat deference" is given to the issuing court, such that the reviewing court's task is "simply to determine whether there was a substantial basis for the issuing court's determination of probable cause." *United States v. Underwood*, 129 F.4th 912, 934 (6th Cir. 2025) (citing Gates at 238).

The Government claims that the search warrant and the affidavit authorized the FBI and Detroit Police to search Mahone's phone for evidence of soliciting prostitution, use of a computer to a commit a crime, human trafficking, transporting a person for prostitution, and other related crimes. But Mahone argues "[t]he affidavit was void of any reliable information upon which to conclude evidence of any offense would be found on Mr. Mahone's phone." ECF No. 41. For the reasons explained on the record during the first hearing on June 3, 2025, the

---

[2] The Sixth Circuit has not decided whether the probable cause nexus in the context of cell phone searches is only "a fair probability that the phone's data will aid in a particular investigation and disclose evidence of criminal activity," or if, instead, it is "a fair probability that the phone itself is being used in connection with criminal activity." *United States v. Sheckles*, 996 F.3d 330, 337-38 (6th Cir. 2021) (noting that the affidavit in this case "would pass muster under any test").

issuing court had a substantial basis to determine there was a fair probability that evidence would be found on Mahone's phone.

The affidavit primarily relied on text conversations between Mahone and Rodriguez as well as hearsay statements from adult victims to establish that (1) Mahone may be aiding, assisting, and abetting human trafficking, (2) Mahone used his cell phone as part of such criminal activity, and (3) there was a fair probability that the phone would disclose evidence of criminal activity. While the affidavit contained more facts concerning Rodriguez's sex trafficking organization than Mahone's specific role in it,[3] the affidavit did provide multiple examples of Mahone's contacts with Rodriguez under circumstances that suggest Mahone was working with Rodriguez in sex trafficking. Most notably, the affidavit described three text conversations between Mahone and Rodriguez in which they sent pictures and discussed "rate," client[s]," and "ads." Affidavit, ECF No. 45 (sealed), PageID.166—67. That alone is sufficient to justify probable cause that evidence of criminal activity related to prostitution would be found on Mahone's cell phone.

Thus, the text messages—combined with the overwhelming and detailed evidence of Rodriguez's involvement in sex trafficking, which Mahone does not dispute—supported a finding of probable cause to

---

[3] Officer Jaskulski testified that he duplicated the draft affidavit he prepared for Rodriguez's case and made some changes to fit Mahone's case. ECF No. 55, PageID.304.

search Mahone's phone, specifically for addresses and telephone numbers of associates in the human trafficking organization, ¶ 2.E, electronically stored evidence, including e-mails, ¶ 2.H, records and information related to identifying victims of human trafficking or the purchasers of commercial sex acts, including photographs, videos, and documents, ¶ 2.I, and records and information related to sex trafficking, including copies of commercial sex advertisements and communications with Rodriguez and adult victims, ¶ 2.K. Based on the officer's experience as well as the text conversations themselves—which occurred on Mahone's phone—the affidavit established a sufficient nexus between the evidence sought and its location.

## C. Whether the Warrant Satisfied the Particularity Requirement as to the Search of the Cell Phone

Mahone also challenges the warrant because there was a discrepancy between "the things to be searched" section of the affidavit as compared to that section in the warrant. As seen below, while the *affidavit* described "Cellular Telephones using" Mahone's number as one of the things or places to be searched, the *warrant* itself did not specify the cell phone as a place or thing to be searched, but only listed Mahone himself and his vehicle:



*Search Warrant Affidavit*, ECF No. 45 (sealed), PageID.164; *Search Warrant*, ECF No. 45 (sealed), PageID.175.

Mahone argues that the warrant allowed the officers to *seize* his cell phone, but not to *search* its contents. "[T]he information on a cell phone is [not] immune from search . . . [but] a warrant is generally required before such a search, even when a cell phone is" lawfully seized. *Riley v California*, 573 U.S. 373, 401 (2014). As a result, Mahone argues the search of the contents of the phone was warrantless, which supports suppression of the evidence found on the phone, because it was not justified by any exigent circumstances nor supported by a later warrant specifically authorizing the search of the phone itself.[4]

It is true that the Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004); *see also Massachusetts v. Sheppard,* 468 U.S. 981, 988 n.5 (1984) ("[A] warrant that fails to conform to the particularity requirement of the Fourth Amendment is

---

[4] Mahone highlights that officers can obtain a separate search warrant to search the contents of a phone that was seized lawfully. *See, e.g.*, *United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. Mar. 7, 2016) (separate search warrant obtained for a phone seized when defendant was arrested pursuant to an arrest warrant); *United States v. Chandler*, 571 F. Supp. 3d 836 (E.D. Mich. Nov. 10, 2021) (separate search warrant obtained for a phone seized when defendant was arrested pursuant to an arrest warrant); *United States v. Nester*, No. 23-1727, 2024 WL 4615777 (6th Cir. 2024) (separate search warrant obtained for phone seized during search of defendant's house).

unconstitutional."). Thus, the fact that the "*application* adequately describe[s] the 'things to be seized' does not save the *warrant* from its facial invalidity." *Groh*, 540 U.S. at 557 ("'The presence of a search warrant serves a high function,' and that high function is not necessarily vindicated when some other document, somewhere, says something about the objects of the search[.]"). Nonetheless, the Fourth Amendment does not prohibit a warrant from cross-referencing other documents under certain circumstances. *Id.* at 557-58.

Here, although the warrant itself did not include the cell phone in the list of things to be searched, it clearly listed cell phones (using Mahone's number) and records that can be stored on cell phones in its paragraph describing the "property to be searched for and seized." *Search Warrant*, ECF No. 45 (sealed), PageID.175. The warrant particularly described for any officer executing the warrant that they were looking for a "cellular telephone using" the phone number ending in -7034 in order to "search[ ] for" evidence that can be found within such a phone, such as:

- "Addresses and telephone numbers of associates . . . stored within . . . cell phone," ¶ E;
- Electronically stored evidence, including e-mails, ¶ H;
- Records and information related to identifying victims of human trafficking or purchasers of commercial sex acts, including photographs, videos, and documents, ¶ I; and,
- Records and information concerning communication and contact with Rodriguez and adult victims, ¶ K.

*Id.* at PageID.175-76. Thus, the warrant sufficiently authorized the officers to review the phone they seized for addresses, phone numbers, e-mails, photos, videos, and communications with Rodriguez and adult victims on the phone to the extent they relate to soliciting prostitution and related crimes.[5] *See United States v. Underwood*, 129 F.4th 912, 936 (6th Cir. 2025) ("The search of an entire personal device for evidence of a specific type of criminal activity is permissible."); *United States v. Bass*, 785 F.3d 1043, 1049-50 (6th Cir. 2015) (finding warrant authorizing broad search of phone for "any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs" for evidence of wire fraud, credit fraud, and identity theft was reasonable because officers could not have known where the information was located on the phone and in what format); *see also* Fed. R. Crim. P. 41(e)(2)(B) (noting that a warrant authorizing the seizure of electronically stored media or information also authorizes a "later review of the media or information consistent with the warrant").

And even if the description in the two-page warrant were somehow deemed to lack particularity, the fact that the affidavit, which accompanied the warrant, did specifically list the phone in the section

---

[5] And in fact, that is the evidence the officers found, as "Mahone's phone contained over 2,000 messages with a minor victim, including messages where Mahone encouraged the minor victim to engage in sex work" as well as "videos and images of Mahone conducting sexual acts with the minor victim." Resp., ECF No. 46, PageID.183.

23

describing the places and things to be searched would cure such a particularity defect. *See Groh*, 540 U.S. at 557-58 (noting that courts may construe a warrant with reference to a supporting affidavit for purposes of satisfying the particularity requirement if the warrant uses appropriate words of incorporation, *and* if the supporting document accompanies the warrant). While the search warrant itself does not contain any words of incorporation, it labels its first paragraph with the number "3", while the first two paragraphs of the Affidavit are numbered "1" and "2." This suggests the Affidavit was likely attached to the Search Warrant and supports a finding that the officers executed the warrant, at the very least, in good faith, even without words of incorporation. *See United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C. Cir. 1990) ("When the magistrate signed the warrant at issue here, with the affidavit apparently attached although not specifically incorporated, the agent reasonably could have concluded that the scope of the warrant was limited to materials supporting the allegations contained in the affidavit.").

Furthermore, even where a warrant fails to include words of incorporation and is not attached to the affidavit, it may still be "appropriate to look to the description" in the affidavit "*if* it is clear that the executing officers were in a position to be aided by the document," such as if the affiant was present during the execution of the warrant. *United States v. Gahagan,* 865 F.2d 1490, 1497 (6th Cir. 1989), *cert.*

*denied,* 492 U.S. 918 (1989); *see also Maxwell*, 920 F.2d at 1033 (noting that some circuits, like the Sixth Circuit, apply the incorporation-by-reference standard "less exactly . . . in situations where . . . the affiant also conducts the search") (citing *Gahagan,* 865 F.2d at 1497–98). Here, the drafter and affiant, Agent Jaskulski and Officer Strunk respectively, executed the search. "[W]hen one of the executing officers is the affiant who describes the property to the judge, and the judge finds probable cause to search the property as described by the affiant, and the search is confined to the areas which the affiant described, then the search, in this case, is in compliance with the fourth amendment." *Gahagan*, 865 F.2d at 1499; *see also Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) (noting that, while an officer who has not been involved in the search warrant application stage should read the warrant in order to determine the object of the search, an officer who prepared the affidavit and search warrant is not required to "disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested").

In an another attempt to cast doubt on Judge Johnson's authorization of the search, Mahone asserts that the discrepancy in the "things to be searched" suggests three scenarios: either the magistrate (1) found probable cause to search the phone without realizing that the warrant omitted it as a place to be searched, (2) did not find probable cause to search the contents of the phone and signed the warrant

believing that it only authorized the search of his person and his car, or (3) did not consider a search of the device at all because it was not listed on the face of the warrant. *Cf. United States v. Abboud*, 438 F.3d 554, 569-70 (6th Cir. 2006). Mahone argues that, where the Court "can only speculate as to whether the magistrate found probable cause" to search the contents of his phone, "a search warrant based on such tenuous ground" should not be upheld. *Id.* at 570 ("Three possible scenarios exist . . . . We cannot say that one scenario is more likely than the others.").

Here, however, the Court need not speculate, because Judge Johnson himself attested by affidavit that he "found the warrant affidavit established probable cause to search Mahone's phone," thereby rejecting scenarios (2) and (3). *Johnson Decl.*, ECF No. 46-3, PageID.209, ¶ 4. Furthermore, the situation in *Abboud* was different: the affidavit attempted to establish probable cause for three offenses, while the warrant listed only one offense. *See* 438 F.3d at 569-70. Here, the warrant was clear about what items of evidence the officers were to look for in the warrant: evidence of soliciting prostitution, transporting a person for prostitution, using a computer to commit a crime, and human trafficking. *See United States v. Honeysucker*, No. 21-2614, 2023 WL 142265, at *4 (6th Cir. 2023) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime.").

Considering the detailed language in both the Affidavit and the Search Warrant, and all the reasons discussed above, the Court concludes that the warrant did not lack sufficient particularity to authorize a search of the cell phone.

Consequently, because the officers had a valid warrant to search the contents of the phone, Mahone's argument that they unlawfully intimated him to provide his phone passcode so they could access the contents of the phone more easily also fails. *See* ECF No. 41, PageID.148. The officers did not need his consent to search his phone under the valid warrant and the Fourth Amendment.[6]

---

[6] Mahone only asserts he did not consent to the warrantless search of his phone under the Fourth Amendment, not that the officers violated his Fifth Amendment rights in asking for the passcode. But even if Mahone had been improperly coerced into giving his passcode, the "inevitable discovery doctrine" would apply to save the evidence obtained on the phone. *See United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (noting that "as long as the evidence discovered during the illegal search would have been discovered during a later legal search, and the second search inevitably would have occurred in the absence of the first, then the evidence may be admitted") (cleaned up). Here, "[s]ince the Government 'actively pursued' (and obtained) a lawful search warrant for [Mahone]'s phone before asking him for the phone's password, the Government would have accessed the phone—and its incriminating contents—even if [Mahone] refused to provide the password." *Tassin v. United States*, 2024 WL 1554343, at *9 (S.D. Fla. Apr. 10, 2024); *see also United States v. Coleman*, 554 F. Supp. 3d 1124, 1157 (D.N.M. Aug. 12, 2021) (applying the inevitable discovery doctrine where the defendants gave their passcodes to the agents after they invoked their rights to counsel because "[t]he likelihood that federal agents would have and

Therefore, suppression of the evidence is unwarranted here.

## IV. CONCLUSION

For the aforementioned reasons, Mahone's Motion to Suppress (ECF No. 41) is **DENIED**.

**SO ORDERED**.

Dated: October 17, 2025          /s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE

---

could have discovered the contents of the Galaxy cell phone evidence pursuant to a valid warrant [was] high").