UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiff,<br><br>v.<br><br>**LANCE CRAIG MAHONE,**<br><br>Defendant. | **2:23-CR-20683-TBG-EAS**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING DEFENDANT'S RENEWED MOTION TO SUPPRESS (ECF NO. 83)** |

In this criminal case, Defendant Lance Craig Mahone, Jr. ("Mahone") moves to suppress evidence obtained after officers searched the contents of his cell phone pursuant to a state search warrant. *See* ECF No. 83, 87, & 88. The Court denied a previous motion to suppress the same cell phone contents, premised on a different theory, on October 17, 2025. *See* ECF No. 60. Mahone faces charges of child sexual exploitation, attempted sex trafficking of a minor, coercion and enticement of a minor, and receipt and possession of child pornography. ECF No. 18.

The Court heard oral argument on the renewed motion October 6, 2026. All the necessary briefs are now before the Court. For the following reasons, Mahone's Renewed Motion to Suppress (ECF No. 83) will be **DENIED**.

## I. BACKGROUND

### A. The Affidavit and Warrant

On June 13, 2022, FBI Agent Jeremy Jaskulski and Detroit Police Officer Michael Strunk, as part of the FBI's Southeast Michigan Trafficking and Exploitation Crimes ("SEMTEC") task force—responsible for conducting and assisting in child exploitation investigations, including the sex trafficking of minors and adults, and other crimes against children—sought a search warrant for Mahone, his 2016 Jeep Cherokee, and his cell phone. *Search Warrant Affidavit*, ECF No. 45 (sealed), PageID.164.

The affidavit in support of the search warrant pertained to a sex trafficking investigation of a certain Alexzonder Rodriguez and described his involvement in a Detroit-based prostitution ring. *Affidavit*, ECF No. 45 (sealed), PageID.164. The affidavit explained that Officer Strunk had received a tip regarding a possible human trafficking situation involving minors and Rodriguez. *Id.* In connection with the Rodriguez investigation, the officers discovered text conversations between Rodriguez and Mahone, who had previously met each other while serving sentences for prior sex offenses in the Michigan Department of Corrections. *Id.* at ¶¶ 4–5.

Based on these text conversations and other statements from adult victims, Agent Jaskulski drafted the affidavit and warrant to search Mahone, his car, and cell phone. *Transcript*, ECF No. 55, PageID.298.

The warrant and affidavit sought evidence of listed offenses including soliciting, accosting, or inviting to commit prostitution, engaging services for purpose of prostitution, transporting a person for prostitution, using a computer to commit a crime, and aiding, assisting, or abetting in human trafficking. *Affidavit*, ECF No. 45 (sealed), ¶ 4–5.

The list of items to be "searched for and seized" included, in relevant part, Mr. Mahone's phone, ¶ 2.A, records of human trafficking and prostitution, to include those which may be secreted in secure locations, *id.* at 2.C; addresses and telephone numbers of associates in the human trafficking organization, including those stored on cell phones, *id.* at ¶ 2.E; electronically stored evidence, including e-mails, ¶ 2.H; records and information related to identifying victims of human trafficking or the purchasers of commercial sex acts, including photographs, videos, and documents, ¶ 2.I; and records and information related to sex trafficking, including copies of commercial sex advertisements and communications with Rodriguez and adult victims, ¶ 2.K.

Judge Johnson of Wayne County's 36th District Court found that there was probable cause to search Mahone, his cell phone and vehicle. *Johnson Decl.*, ECF No. 46-3, PageID.209, ¶ 4. Judge Johnson electronically signed the last page of the warrant affidavit on June 13, 2022 at 2:13 PM. *Id.* at ¶¶ 4-5; *Affidavit*, ECF No. 45 (sealed), PageID.174.

### C. The Search

Officers visited Mahone at his job at Belle Tire Distribution Center the next morning, around 6:30 a.m. on June 14, to interview him and eventually seize his phone. *Strunk Decl.*, ECF No. 46-2, PageID.203, ¶ 9. When the officers asked Mahone for the passcode to his phone, Mahone twice asked to see the warrant, but Officer Strunk responded they would show it to him later. ECF No. 41, PageID.148; *Def. Ex. D*, ECF No. 41, at 01:18:42-01:20:10. After Mahone gave—or as the defense maintains, was coerced into giving—the passcode for his phone, the FBI completed a forensic extraction of the device. *Strunk Decl.*, ECF No. 46-2, PageID.203, ¶ 9; ECF No. 41, PageID.135. Mahone's phone contained over 2,000 messages with a minor victim, including messages where Mahone encouraged the minor victim to engage in sex work. ECF No. 46, PageID.183. The phone also contained videos and images of Mahone engaged in sexual acts with the minor victim. *Id.* While retaining the forensic extraction of the contents of the phone, Agent Jaskulski returned the phone to Mr. Mahone the next day, June 15, 2026.

On July 8, 2022, Agent Jaskulski received an investigative lead from Michigan State Police identifying a minor victim from one of the photos found in Mr. Mahone's extracted cell phone data during the execution of the June 14 search warrant. At that point, law enforcement contacted Mr. Mahone to discuss the evidence contained within the phone that demonstrated Mr. Mahone was involved in the victimization of a

minor. Later, beginning in early April 2023, Agent Jaskulski returned several times to review the cell phone extraction data for personal identifying information of other individuals suspected of being used in placing personal advertisements related to sex trafficking. ECF No. 83-4, PageID.542–45.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C), a defendant may file a pretrial motion asserting a constitutional violation that justifies suppression of any unlawfully obtained evidence. *See* Fed. R. Crim. P. 12(b)(3)(C); *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979) (noting that the defendant bears the burden to prove the violation of a constitutional right justifying suppression).

The Fourth Amendment protects "[t]he right of the people to be secure in their . . . effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It requires "only three things" with respect to search warrants: (1) that search warrants be issued only by "neutral and detached" magistrates, (2) that search warrants issue only upon a finding of "probable cause" supported by oath or affirmation, and (3) that search warrants "particularly describ[e] the place to be searched, and the . . . things to be seized." *United States v. Beals*, 698 F.3d 248, 264 (6th Cir. 2012) (citations omitted) ("[*O*]*nly* the Fourth Amendment (to the exclusion of state law) applies in federal prosecutions involving evidence seized by state officials.").

Recognizing the "immense storage capacity" of cell phones, the Supreme Court has held that officers must generally obtain a warrant before searching the contents of a phone. *Riley v. California*, 573 U.S. 373, 401 (2014) (holding that the search incident to arrest exception does not apply to the content of cell phones). "[E]vidence seized during an unlawful search [cannot] constitute proof against the victim of the search," *Wong Sun v. United States*, 371 U.S. 471, 484 (1963), and thus must be excluded, *see Weeks v. United States*, 232 U.S. 383, 398 (1914) (establishing the exclusionary principle), unless an exception applies, *e.g.*, *United States v. Leon*, 468 U.S. 897 (1984) (establishing the good-faith exception to the exclusionary rule).

**III. DISCUSSION**

In the motion to suppress before the Court, Defendant targets a single constitutional issue: whether law enforcement officers were required to obtain a new warrant before returning to the phone extraction data to investigate evidence linked to child sexual abuse material ("CSAM"). At oral argument, both parties agreed that if the evidence obtained during the subsequent review of the cell phone extraction data was authorized by, or within the scope of, the original warrant, then law enforcement was authorized to search for that evidence. Thus, the narrower issue is whether the subsequent search of Mahone's cell phone data was beyond the scope of the original June 14 warrant. Both parties also agree that Sixth Circuit precedent from

*United States v. Evers*, 669 F.3d 645, 650–52 (6th Cir. 2012), and *United States v. Castro*, 881 F.3d 961 (6th Cir. 2018) control, but differ as to how those cases should be understood.

### A. *Castro* and *Evers*

In *Castro*, federal agents searched a previously seized cell phone to identify members of a criminal organization they were investigating. *Id.* at 963. The phone's seizure was authorized by a Texas warrant, the probable cause for which related to a series of aggravated robberies in the state. *Id.* New facts surfaced which led federal law enforcement to believe that the robberies were carried out by a member of a criminal organization that was also the target of the federal investigation. *Id.* at 963–64. The member who was the target of the investigation, Olaya, argued that the agents' second search was not a "reasonable continuation" of the initial search because it occurred months later, and so when the officers failed to obtain a new warrant before searching his phone, they violated his Fourth Amendment right to be free from unreasonable searches. *See id.* at 966–68.

The Sixth Circuit found, however, that the privacy interests inherent to a phone were not comparable to those in a home, where the "reasonable continuation" rule typically applies. *Id.* The Sixth Circuit thus held that federal agents may use a state warrant to conduct a follow-

up search of a seized cell phone,[1] "so long as the search does not exceed the probable cause articulated in the original warrant." *Id.* at 967. The Court reasoned that, often, "new information casts new light on the previously seized evidence," that provides good reason for officers to review such evidence. *Id.* at 966. Further, the Court reinforced its prior holding in *Evers* that, during a follow-up search, "evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant" and the device remained secured. *Id.* (quoting *Evers*, 669 F. 3d at 652).

**B. The Probable Cause Articulated in the Original Warrant**

Mahone argues that because the June 14 warrant was for an unrelated matter, namely, a human trafficking investigation centered around Rodriguez, that the subsequent search for CSAM centered around Mahone was beyond the warrant's scope. Further, Mahone argues that searching for evidence of fraud[2]—identifying information of other individuals—was also beyond the scope of the original human trafficking investigation. ECF No. 83, PageID.529–31. Thus, Mahone argues, Agent

[1] An unpublished Sixth Circuit opinion, *United States v. Winters*, No. 25-5158, 2025 WL 2946149, at *4 (6th Cir. Oct. 17, 2025), treats a physical cell phone and extraction data as the same in application. It should be noted, however, that Winters did not contest the validity of the initial search and seizure.

[2] Mahone maintains that on June 15, 2022, Agent Jaskulski informed Mahone he had discovered identifying information of other individuals on the Defendant's phone he believed was linked to "possible fraud." EFC No. 83, PageID.518.

Jaskulski violated Mahone's Fourth Amendment right to reasonable searches when he searched his extracted phone data.

In response, the government argues that "sex trafficking of a minor is also sex trafficking." ECF No. 87, PageID.576. At oral argument, the government noted that it would be strange indeed to prevent law enforcement officers from seizing evidence related to sex trafficking of a minor during a sex trafficking investigation—a so-called "minor victim exception" to executing a lawful warrant.

The record indicates that the probable cause articulated in the original warrant was sufficient to encompass the subsequent search of the digital copy for evidence of CSAM-related offenses. To begin, the affidavit explains that the investigation began after SEMTEC received a tip about a human trafficking ring that may have involved minor victims. *Affidavit*, ECF No. 45 (sealed), PageID.164. Mahone is first implicated in the ring by sharing a sexually explicit photograph of an unidentified female to Rodriguez, ECF No. 57-7, PageID.384, and it is later discovered by law enforcement that Mahone intended to begin his own commercial sex operation. ECF No. 57-7, PageID.391. These facts easily provide probable cause to search for evidence of the crimes for which he is currently charged involving minor victims. The Court finds that the probable cause articulated in the original warrant for the human trafficking operation was sufficient to support a review of the extracted data for CSAM-related federal charges.

### C. Reasonably Related to Offense in the Original Warrant

Mahone argues that "[o]nce [CSAM] evidence was discovered, the investigation was no longer limited to Mahone's alleged involvement with Alexonder Rodriquez and the identified [adult victims]. The investigation shifted to entirely different offenses." ECF No. 83, PageID.530. At oral argument, counsel for Mahone pointed out that CSAM or child exploitation charges are not included in the original warrant; that a conviction under a CSAM charge requires significantly different elements to be proven at trial; and that consequently, such child sexual abuse or child pornography charges cannot be "reasonably related to the offense which formed the basis for the search warrant." *See Castro*, 881 F.3d at 967 (quoting *Evers*, 669 F.3d at 652.

For its part, the government concedes that there were no federal charges for production and receipt of child pornography in the original warrant, but "the state crimes under investigation were prostitution, human trafficking, and use of a computer to commit a crime," which "so happened to involve attempting to prostitute a minor by posting commercial sex advertisements online." ECF No. 87, PageID.577. Essentially, the government reiterated the argument in its brief that "[t]his Court should not allow Mahone to suppress relevant evidence inextricably linked to his attempted sex trafficking of [the minor victim], just because that same evidence might also constitute evidence of other

crimes . . . not identified in the original warrant." ECF No. 87, PageID.580.

The Court concludes that the charges the federal government must prove against Mahone at trial are reasonably related to some of those state offenses described in the June 14 warrant. For example, two of the elements the government must prove to establish a violation of 18 U.S.C. §§ 1591(a)(1), 1594 (attempted sex trafficking of a minor), are that Mahone knowingly attempted (1) "to recruit, *entice*, harbor, *transport*, provide, obtain, maintain, and solicit," the minor victim, and (2) the minor victim "would be caused to engage in a commercial sex act." *Id.* (emphasis added). By comparison, one of the charges listed in warrant, MCL 750.459 (transporting person for prostitution) requires the government to prove a defendant "knowingly *transport*[ed]. . . any person for the purpose of prostitution or with the intent and purpose to induce, *entice*, or compel that person to become a prostitute," MCL 750.459(1) (emphasis added), or that the defendant facilitated transportation for the purpose of prostitution or human trafficking, *see* MCL 750.459(2). The same statute contemplates additional penalties when the victim transported is a minor. *See* MCL 750.459(3).

As these elements are substantively identical, it is clear that they could be proven with the same or similar evidence. An analysis comparing 18 U.S.C. § 2252A(a)(2), (a)(5)(B) (Receipt/Possession of Child Pornography), with MCL 752.796 (Use of Computer to Commit a Crime)

produces a similar result. The Court finds that the charges Mahone currently faces are reasonably related to those in the search warrant. The Court agrees that *sex trafficking of a minor is sex trafficking*. *Cf. United States v. Fletcher*, No. 24-20457, 2025 WL 2945731, at *7 (E.D. Mich. Oct. 17, 2025) (DeClercq, J.) (finding "evidence of a multi-state lien-washing scheme . . . was reasonably related to evidence of Ohio vehicle theft and identify fraud that the warrant expressly permitted them to pursue."). The probable cause set out in the affidavit was reasonably related to the crimes as to which the government searched for evidence.

**D. Possessory Interest in Extracted Phone Data**

Mahone argues that this case is meaningfully different than *Castro* because, there, law enforcement officers retained the cell phone—and thus kept it "secure"—whereas here, law enforcement had only a digital copy because they returned the cell phone—thus making the phone "non-secure." *See id.* at PageID.529. Relying on *United States v. Hulscher*, No. 16–40070, 2017 WL 657436 (D.S.D. Feb. 17, 2017), ECF No. 83, PageID.533, Mahone argues that his possessory interest in the information on his phone was restored once the physical device was returned to him on June 15, 2022, and his privacy interest in the extracted phone data therefore remained intact. *See* ECF No. 83, PageID.523.

*Hulscher*, however, said nothing about the effect returning a cell phone to its owner may have on whether the owner retained a privacy

interest in a digital copy of the phone's contents. In *Hulscher*, the local police in Huron, South Dakota had seized a cell phone in connection with forgery, counterfeiting, and identity theft charges. Later the Bureau of Alcohol Tobacco and Firearms was investigating Hulscher for firearms offenses, learned of the prior state investigation, and requested to examine the complete digital copy of Hulscher's iPhone, which resulted in the discovery of firearms-related evidence. *Hulscher*, 2017 WL 657436 at *2. The district court found that the ATF agent's search of the saved digital evidence, without a search warrant, for evidence relating to firearms violations violated the Fourth Amendment. *Id.* at *3–5.

*Hulscher* holds that a person retains a privacy interest in the complete digital copy of his or her cell phone as against government searches for data not authorized by a search warrant. In this case, all parties agree that Mahone retained a privacy interest in the data copied from his cell phone. But here, unlike in *Hulscher*, the later search of Mahone's cell phone data for sex trafficking evidence of a minor victim fell within the scope of the search warrant. *Hulscher* thus supports the Court's conclusion here, because the evidence seized was pursuant to a lawful warrant.

At oral argument, defense counsel also maintained that Mahone was unaware that a digital copy of the phone was made, and therefore never thought to request any of the extracted data back. And because "[l]aw enforcement retained those digital contents and continued to

access them without obtaining additional judicial authorization," and because there was no impediment to officers reviewing the phone on June 14 and15, this violated Mahone's Fourth Amendment privacy interests. ECF No. 83, PageID.523–24.

This argument is unconvincing. The warrant authorized the officers to seize Mahone's cell phone and search its contents. Even if Mahone had immediately requested the return of his cell phone and its digital copy, such a request would not have de-legitimized the agents' authority to thoroughly search its contents pursuant to the search warrant. Nor were the officers, upon request or otherwise, bound to return the extracted data to Mahone, when it contained evidence of a crime and, as was later discovered, contraband child pornography. *See White*, 2025 WL 2946149, at *4–5 (probable cause did not dissipate over time, continued searches of seized electronic storage devices did not violate the Fourth Amendment where law enforcement later developed a means to overcome encryption software, and government did not need to return devices that contained evidence of the crime).

During the hearing on the motion, the government also cited several practical considerations tied to the government's ability to review extracted data without a new warrant, such as in preparation for trial. Of course, such a review would be limited by the scope of the search warrant.

The Court has already found, despite several deficiencies of the June 14 warrant, that none amounted to a constitutional violation. *See* ECF No. 60. That warrant authorized the seizure of Mr. Mahone's cell phone. *Affidavit*, ECF No. 45 (sealed), PageID.164. That the officers returned the cell phone to Mr. Mahone while retaining the forensic extraction of its contents had no effect on his privacy interest in the extraction. The government's ability to invade his privacy interest in the phone's contents remained limited by the scope of the search warrant. And the government was no longer capable of invading Mr. Mahone's privacy interest in the phone itself. Nothing in the record indicates that the government cloned Mr. Mahone's cell phone to view and track activity that Mr. Mahone engaged in after it was returned June 15. And there is no meaningful distinction in the actual cell phone evidence available to law enforcement for review after June 15, whether this evidence was reviewed on the physical device or a forensic image of that device when it was seized.

The Court finds that when law enforcement reviewed the extracted cell phone data after returning the physical phone to Mr. Mahone, it was pursuant to and within the scope of a lawful search warrant. Consequently, Mr. Mahone's privacy and possessory interests were not violated. Therefore, suppression of the evidence is unwarranted here. Because the Court can find no fault in the government's review of the

extracted cell phone data, there is no need to address any exceptions to the warrant requirement.

## IV. CONCLUSION

For the aforementioned reasons, Mahone's Renewed Motion to Suppress (ECF No. 83) is **DENIED**.

**SO ORDERED**.

Dated: October 15, 2026

/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE